IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INDEPENDENT SCHOOL DISTRICT OF BOISE CITY,<br><br>    Plaintiff,<br><br>v.<br><br>COREGIS INSURANCE COMPANY, an Indiana corporation,<br><br>    Defendant. | Case No. CV-04-220- S-MHW<br><br>**MEMORANDUM DECISION and ORDER** |

# INTRODUCTION

Plaintiff Independent School District of Boise City ("the School District") filed this action against Defendant Coregis Insurance Company ("Coregis"), alleging a claim for breach of contract arising from Coregis' decision to cancel the School District's policy after one year, requiring the plaintiff to purchase coverage with other insurers at a higher premium. Currently pending before the Court for its consideration are the following motions: (1) Plaintiff's Motion for Partial Summary Judgment (Docket No. 15), filed on October 14, 2005; and (2) Defendant's Cross-Motion for Summary Judgment (Docket No. 21), filed on December 20, 2005. The question presented in the parties' cross-motions for summary judgment is whether language in

the policy under the Rate Guarantee Endorsement stating, "Coregis agrees to keep this policy in force and that rates will not increase more than 3% per year for the 2002-2003 and 2003-2004 policy years," operated as a non-cancellation provision for those years, thereby superceding the Cancellation and Nonrenewal Endorsement of the policy.

## I.
## Background.

Coregis issued an insurance policy to the School District, policy number FE-913-8204, (the "policy") for the period spanning July 1, 2001 to July 2, 2002. The policy covered property damage and liability. Specifically, Coregis agreed to provide Property Coverage; Earthquake and Flood Coverage; Equipment Breakdown Coverage; Crime Coverage; General Liability and Wrongful Acts Coverage; and Auto Coverage. In addition, the policy obligated Coregis to defend or reimburse the Independent School District of Boise City for reasonable attorney's fees. The School District asserts it paid $417,471 for the policy year 2001-2002 while Coregis asserts the School District actually paid $400,226.00 for the period in question.

The policy included a Rate Guarantee Endorsement, which read as follows:

> This endorsement modifies coverage afforded under the following:
>
> SCHOOL PACKAGE POLICY
>
> **Rate Guarantee**
>
> Coregis agrees "to keep this policy in force and that rates will not increase more than 3% per year for the 2002-2003 and 2003-2004 policy years so long as the cumulative "loss and allocated loss adjustment expense ratio" does not exceed 60% . . .
>
> **All other terms and conditions of this policy remain unchanged.**

**Memorandum Decision & Order - Page 2**

The policy also includes a Cancellation and Nonrenewal Endorsement, which allowed Coregis to cancel the policy for any reason if the policy had been in effect for less than 60 days so long as the correct notification procedures were followed. In addition, if the policy had been in effect for more than 60 days, Coregis could cancel the policy under one or more of the conditions specified in Paragraph A(2)(b)(1) through (7) of the Cancellation and Nonrenewal Endorsement. The following portions of that provision are relevant to the issues in this matter:

>  IDAHO CHANGES – CANCELLATION AND NONRENEWAL
>
> This endorsement modifies insurance provided under the following:
>
> A. Paragraphs **1.** and **2.** of the CANCELLATION Common Policy Conditions are replaced by the following:
>
> 1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation. Cancellation will be effective on the later of the date requested by the first Named Insured or the date we receive the request.
>
> 2. POLICIES IN EFFECT
>
>    \*          \*          \*
>
>    b. MORE THAN 60 DAYS
>
>    If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons.
>
>    \*          \*          \*
>
>    (5) Loss of or decrease in reinsurance which provided us with coverage for all or part of the risk insured.

Coregis cancelled the policy effective July 1, 2002. Coregis then agreed to a short extension of the 2001-2002 policy period until September 5, 2002 so as to allow the School District adequate time to find alternate insurance. Coregis maintains it cancelled the policy pursuant to Paragraph A(2)(b)(5) of the Cancellation and Nonrenewal Endorsement after learning it would be unable to obtain reinsurance for the peril of terrorism. Coregis attached as Exhibit "H" to its Statement of Undisputed Material Facts and Response to Plaintiff's Statement the Property Catastrophe Excess of Loss Reinsurance Agreement issued to it for the period of March 1, 2001 through April 1, 2002, as well as the Property Per Risk Excess of Loss Reinsurance Agreement issued to it for the same period attached as Exhibit "I." Coregis notes these reinsurance policies did not contain a terrorism exclusion when Coregis issued the policy to the School District for 2001-2002 while these polices for the following year effective April 1, 2002 attached as Exhibits "J" and "K" did contain exclusions for the peril of terrorism.

After Coregis cancelled the policy, the School District obtained a policy through Hartford, with some coverage through Coregis for the 2002-2003 policy period. In the following year, the School District obtained a policy exclusively with CNA for the period running through 2003 to 2004. According to the School District, it was unable to obtain the same coverages in place under the Coregis policy because some types of coverage were not available. Moreover, some limits and deductibles for the acquired coverages changed.

The School District puts forth evidence that it paid $573,263 for the total premium covering the 2002-2003 policy period. According to the School District's calculations, this rate constituted a $143,267.87 increase over the rate Coregis promised under its cancelled policy with the School District (representing the actual 2001 premium plus 3% increase). During the

**Memorandum Decision & Order - Page 4**

2003-2004 coverage period, the School District asserts it paid $603,612 for its premium, which amounted to $160,717,02 increase from the guaranteed rate under its policy with Coregis (representing the 2002-2003 guaranteed premium plus 3% increase).  Based on these calculations, the School District seeks damages in the sum representing the difference between the guaranteed rate promised under the Coregis policy and the actual premiums paid for the 2002-2003 and 2003-2004 policy periods.  With the present motion, the School District moves for partial summary judgment as to the breach of contract claim and those damages based upon the increased premiums actually paid.  Coregis moves for summary judgment in response, seeking dismissal of the entire action.

## II.
## Standard of review.

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets the requirement of Rule 56 by showing either that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  It is not enough for the

**Memorandum Decision & Order - Page 5**

[non-moving] party to "rest on mere allegations of denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id*. at 249-250. "The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]." *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has recently emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992).

In order to withstand a motion for summary judgment, the non-moving party:

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

## III.
## Discussion

The real dispute in this matter regarding liability does not revolve around the parties' differing version of the facts, but, rather, how various contract provisions should be interpreted. The School District argues the Rate Guarantee Endorsement, wherein Coregis stated it agreed "to keep the policy in force and that rates [would] not increase more than 3% per year for the 2002-2003 and 2003-2004 policy years," amounted to an agreement not to cancel the policy, which thereby prevented Coregis from cancelling the policy as it did after the 2001-2002 policy year.  Conversely, Coregis characterizes the statement in Rate Guarantee Endorsement as <u>solely</u> an agreement to limit the premium rate increase to no more than 3% for the 2002-2003 and 2003-2004 policy years and not as an agreement to prevent cancellation of the policy.  Instead, Coregis argues that it cancelled the policy in full accordance with the Cancellation and Nonrenewal Endorsement.

In the event the Court finds liability on part of Coregis for cancelling the policy or finds a genuine issue of material facts as to this breach of contract claim, Coregis argues the School District's motion for partial summary judgment with respect to damages should nonetheless be denied.  As Coregis asserts the actual premium paid for the 2001-2001 policy period was $400,226.00, it disputes each of the School District's calculations given that the calculations are based on the School District's assertion that it paid $417,471.00 for the 2001-2002 premium. Coregis argues this discrepancy in the base premium rate for 2001-2002 creates a genuine issue

**Memorandum Decision & Order - Page 7**

of material fact as to the amount of the School District's alleged damages and thus precludes summary judgment in favor of the School District in this regard.

As a district court exercising diversity jurisdiction, this Court must apply state law. Because the insurance policy was issued in Idaho, the Court must apply Idaho law. *See, e.g., Industrial Indem. Ins. Co. v. U.S.*, 757 F.2d 982, 985 (9th Cir. 1985)("Idaho has adopted the Restatement rule that the law governing interpretation of a contract is the local law of the state that has 'the most significant relationship to the transaction and the parties.'")

In interpreting the insurance contract, the Court begins with interpreting the plain language of the insurance policy to determine whether or not there is an ambiguity. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau*, 141 Idaho 660, 115 P.3d 751, 754 (*citing Clark v. Prudential Property and Cas. Ins. Co.,* 138 Idaho 538, 541, 66 P.3d 242, 245 (2003). "[W]here the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Clark*, 138 Idaho at 541, 912 P.2d at 122. This is a question of law, for which the Court construes the language in the insurance contract in a light most favorable to the insured as insurance policies are contracts of adhesion. *Id.* at 540, 66 P.3d at 244. For this reason, the burden remains on the insurers to use clear and precise language. *Id.* In addition, the Court must construe the policy as a whole not an isolated phrase. *Selkirk Seed Co. v. State Ins. Fund,* 135 Idaho 434, 437, 18 P.3d 956, 959 (2000).

In instances where the policy is reasonably subject to differing interpretations, this warrants a finding that the policy language is ambiguous and its meaning is a question of fact. *Id.* When determining the meaning of an ambiguous contract, the trier of fact is obligated to

interpret the contract in the same manner that a reasonable person would have understood the language to mean "and the words used must be construed given their ordinary meaning." *Id.*

Here, the Court concludes the Rate Guarantee Endorsement did not eliminate the concurrent Cancellation and Nonrenewal Endorsement under the policy. A contrary reading wherein the rate guarantee limited the terms of the express cancellation provision would render the cancellation and nonrewewal provision superfluous. Nothing in the terms of the insurance contract suggests the parties intended such a result. This is not a situation where the cancellation provision only set forth the procedures for cancelling the policy but did not articulate the conditions under which the policy could be cancelled. Nor did the School District submit any extrinsic evidence that it negotiated for or believed it obtained noncancellable insurance by virtue of the Rate Guarantee Endorsement.

Rather, the Court finds Coregis' interpretation of the contract terms more persuasive. Coregis suggests and the Court agrees that the phrase, "agrees to keep <u>this</u> policy in force" [emphasis added], prevented Coregis from changing any of the terms and conditions of the policy, including policy limits, deductibles, coverages and/or exclusions, because if Coregis had been allowed to change the terms and conditions of the policy, this would have effectively undermined any rate guarantee – making the rate guarantee essentially illusory.

The position that the Rate Guarantee Endorsement did not also guarantee the School District noncancellable insurance is further bolstered by the structure of the contract. The fact the conditions for cancelling the policy fell under the heading, "Cancellation and Nonrenewal," and the phrase in question, wherein Coregis agreed to keep this policy in force for two years, fell under the heading, "Rate Guarantee" indicates the parties did not intend the disputed phrase to

serve as a non-cancellation provision.  Otherwise the disputed phrase would have fallen under a heading indicating explicitly that it was a non-cancellation provision and not just a rate guarantee as the actual heading suggests.

In the Court's view, the language in the rate guarantee provision did just that – guaranteed a certain rate for the designated years as indicated by the heading.  And, it did <u>not</u> implicitly obviate the express language in the cancellation provision allowing Coregis to cancel the policy if certain conditions were met.  Therefore, the terms can be read in harmony.  Based on the plain and unambiguous language in the policy, the Court finds Coregis was within its rights when it cancelled the policy pursuant to the explicit cancellation conditions.  As the Court finds in favor of Coregis with respect to liability, the issue of damages is moot.  Accordingly, the Court will grant summary judgment in favor of Coregis and deny the School District's Motion for Summary Judgment.

## IV.
## Conclusion

Policy No. FE-913-8204, issued to the School District, clearly and unambiguously allowed Coregis to cancel the policy upon the loss of or decrease in reinsurance which provided it with coverage for all or part of the risk insured, i.e., the peril of terrorism.  Therefore, the Court concludes as a matter of law that Coregis acted within its contractual rights when it cancelled the policy after providing the School District with the proper notice.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Motion for Partial Summary Judgment (Docket No. 15), filed on October 14, 2005, is DENIED

2) Defendant's Cross-Motion for Summary Judgment (Docket No. 21), filed on December 20, 2005, is GRANTED.

DATED: June 20, 2006

*[signature]*

Honorable Mikel H. Williams
United States Magistrate Judge